******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# ROGER SAUNDERS, TRUSTEE *v.*
# KDFBS, LLC, ET AL.
## (SC 20182)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff, as trustee, sought to foreclose a mortgage on certain real property owned by the defendant L Co. In the first count of his complaint, the plaintiff sought foreclosure of his mortgage, alleging, inter alia, that there were encumbrances on the subject property that were subsequent and subordinate to his mortgage, including the mortgage of the defendants K and D. In the second count, the plaintiff sought a declaratory judgment that the mortgage of K and D, which was purportedly recorded before the plaintiff's mortgage, was subordinate to the plaintiff's mortgage on the ground that the plaintiff had no notice of K and D's mortgage because it had been incorrectly indexed by the town clerk's office. K and D denied the allegation in each count that their mortgage was subordinate to the plaintiff's mortgage and asserted a special defense that L Co. had mortgaged the subject property to them and that their mortgage was prior in right and title to the plaintiff's mortgage. The trial court rendered judgment for the plaintiff on both counts and ordered a foreclosure by sale. Prior to the sale date set by the court, K and D appealed from the judgment of foreclosure to the Appellate Court. The plaintiff moved to dismiss the appeal on the ground that the Appellate Court lacked subject matter jurisdiction because the priority of mortgages cannot be challenged until after the foreclosure sale has taken place, and that court dismissed the appeal for lack of a final judgment. On the granting of certification, K and D appealed to this court. *Held* that the Appellate Court improperly dismissed the appeal of K and D for lack of a final judgment, as the judgment of foreclosure by sale in the present case was a final judgment: the trial court rendered judgment for the plaintiff, and against K and D, on both counts of the complaint and ordered the full measure of relief sought therein, and the determination of priorities as between the plaintiff and K and D was an integral part of the judgment of foreclosure, as it was the joint status of K and D as a subsequent encumbrancer that permitted the foreclosure action to proceed against them because, if the mortgage of K and D had priority over the plaintiff's mortgage, K and D would not be proper parties to the foreclosure action and would retain their full property interest, rather than be left with only a claim to a portion of any proceeds from the sale after the plaintiff is paid in full; moreover, the plaintiff could not prevail on his claim that K and D were not appealing to the Appellate Court from the judgment of foreclosure by sale because their appeal challenged the trial court's priority determination rather than the plaintiff's right to foreclose on his mortgage, as the priority issue was in dispute as to both counts of the complaint, and the mere fact that the trial court resolved this dispute by first disposing of the declaratory judgment count did not negate its legal effect on the foreclosure count; furthermore, there was no merit to the plaintiff's claim that an appeal of a priority determination before the trial court's approval of the sale and the rendering of a supplemental judgment is premature, as the priority of the foreclosing plaintiff is a proper and essential aspect of the judgment of foreclosure by sale, a supplemental judgment is intended to resolve disputes only as between parties holding interests subsequent in priority, the trial court's priority determination was ripe for adjudication before the sale was approved because K and D's loss of priority was neither hypothetical nor contingent on an event that could never transpire, and practical and pragmatic considerations, including the concern that the ability to calculate an appropriate bid on the property would be impaired by the uncertainty of whether the foreclosing plaintiff or a defendant encumbrancer has first priority, weighed strongly in favor of permitting an appeal before the foreclosure sale has been ratified.

Argued October 24, 2019—officially released May 18, 2020*

Action to foreclose a mortgage on certain of the named defendant's real property, and for other relief, brought to the Superior Court in the judicial district of Danbury and tried to the court, *Hon. William J. Lavery*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment of foreclosure by sale and determined the priority of the parties' mortgages as to the subject property, and the defendant Karen Davis et al. appealed to the Appellate Court, which granted the plaintiff's motion to dismiss the appeal, and the defendant Karen Davis et al., on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Alexander Copp*, with whom were *Neil R. Marcus* and, on the brief, *Barbara M. Schellenberg*, for the appellants (defendant Karen Davis et al.).

*Jessica M. Signor*, with whom were *Michael J. Jones* and *John J. Ribas*, for the appellee (plaintiff).

*Opinion*

McDONALD, J. The issue in this foreclosure action is whether a determination of the priority of mortgages can be challenged in an appeal from the judgment of foreclosure by sale, before the foreclosure sale has taken place, when the priority of the foreclosing plaintiff's mortgage is in dispute. The trial court rendered judgment in favor of the plaintiff, Roger Saunders, Trustee of Roger Saunders Money Purchase Plan, on his two count complaint seeking a judgment of foreclosure on certain real property and a declaratory judgment that his mortgage had priority over a purported mortgage on the property held by the defendants Karen Davis and Daniel Davis. The Appellate Court summarily dismissed the Davis defendants' appeal challenging the priority of the plaintiff's mortgage over their mortgage for want of a final judgment. We distinguish the present case from one in which there is a dispute among junior encumbrancers and reverse the Appellate Court's order summarily dismissing the appeal.

The following undisputed facts were found by the trial court or are otherwise reflected in the record. In March, 2008, the defendant KDFBS, LLC, purchased the subject property, a condominium in Ridgefield, by way of a deed that was recorded under its name in April, 2008. KDFBS is managed by its sole member, the defendant Brian Scanlon.[1]

In June, 2008, KDFBS executed a mortgage deed on the property in favor of the Davis defendants in the principal amount of $565,000. Although the signature line and the acknowledgement clause of the deed reflected that Scanlon was executing the deed in his capacity as a member of KDFBS, his designation as a member was erroneously omitted in the grantor clause at the top of the mortgage deed. The Ridgefield town clerk's office indexed the deed under Scanlon's personal name as the grantor.

In October, 2009, KDFBS executed a second mortgage deed on the Ridgefield property in favor of the plaintiff as security for a joint loan in the amount of $110,000 to KDFBS and to Scanlon individually. Scanlon told the plaintiff that he would have a first mortgage on the property. To ensure his security for the loan, the plaintiff had a title search conducted. That search revealed no mortgages of record in KDFBS' chain of title. The plaintiff's mortgage deed was duly recorded in October, 2009.

In December, 2009, the Ridgefield town clerk's office changed the official index for the Davis mortgage after an unidentified person brought the indexing error to the town clerk's attention. A correction report was issued, and the Davis mortgage was changed from the grantor index for Scanlon to the index for KDFBS.[2]

KDFBS and Scanlon subsequently defaulted on their

obligation to the plaintiff, which gave rise to the present action. In the first count of the complaint, the plaintiff sought foreclosure of his mortgage. In addition to asserting allegations regarding the default, this count alleged that there were encumbrances on the subject property that were subsequent and subordinate to the plaintiff's mortgage, among which was the purported Davis mortgage, which was recorded in 2008. In the second count, the plaintiff sought a declaratory judgment that the 2008 Davis mortgage was subordinate to the plaintiff's 2009 mortgage because the plaintiff had no notice of it due to it having been indexed under Scanlon's name.[3]

The Davis defendants filed an answer denying the allegation in each count that their mortgage was subordinate to the plaintiff's mortgage. They also asserted a special defense that KDFBS, acting through its duly authorized member, Scanlon, had mortgaged the subject property to them and that this mortgage was prior in right and title to the plaintiff's mortgage.

KDFBS was defaulted for failure to appear and Scanlon was defaulted for failure to plead. The plaintiff then filed a motion for a judgment of foreclosure by sale. The motion was supported by an affidavit of debt totaling $176,467.50, an affidavit of attorney's fees in the amount of $18,345, and an appraisal assessing the property's fair market value at $310,000.

Following a contested trial between the plaintiff and the Davis defendants, the court rendered judgment in favor of the plaintiff on both counts and ordered a foreclosure by sale.

Prior to the sale date set by the court, the Davis defendants appealed from the judgment. The plaintiff moved to dismiss the appeal, contending that the Appellate Court lacked subject matter jurisdiction because its case law established that priority of mortgages cannot be challenged until after the foreclosure sale has taken place. See, e.g., *Moran* v. *Morneau*, 129 Conn. App. 349, 357, 19 A.3d 268 (2011). The Appellate Court thereafter issued an order summarily dismissing the appeal for lack of a final judgment. The Davis defendants' certified appeal to this court followed.

The certified question is framed as whether the Appellate Court properly dismissed the appeal "for lack of a final judgment in accordance with *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983)." *Saunders* v. *KDFBS, LLC*, 330 Conn. 915, 193 A.3d 559 (2018). *Curcio* sets forth two circumstances in which an interlocutory ruling is deemed to have the attributes of a final judgment so as to permit an immediate appeal.[4] See *State* v. *Curcio*, supra, 31. The Davis defendants contend that *Curcio* is inapplicable to the present case, however, because they are, in fact, appealing from a final judgment. Alternatively, the Davis defendants rely on the

fact that a declaratory judgment is designated by statute to "have the force of a final judgment." General Statutes § 52-29 (a).

The plaintiff makes two arguments premised on the fact that the trial court has not yet approved a sale of the property or rendered the supplemental judgment that determines the priority of encumbrancers in distributing proceeds from the sale. First, he contends that these facts demonstrate that the underlying decision was an interlocutory order that was not appealable under either circumstance set forth in *Curcio*. Second, he contends that Appellate Court precedent demonstrates that the appeal is not ripe before these acts occur. We agree with the Davis defendants' principal argument and, therefore, do not separately consider the effect of the judgment rendered on the declaratory judgment count.

"It is axiomatic that, except insofar as the constitution bestows upon [an appellate court] jurisdiction to hear certain cases; see *Fonfara* v. *Reapportionment Commission*, 222 Conn. 166, 610 A.2d 153 (1992); the subject matter jurisdiction of the Appellate Court and of [the Supreme Court] is governed by statute. *Grieco* v. *Zoning Commission*, 226 Conn. 230, 231, 627 A.2d 432 (1993). It is equally axiomatic that, except insofar as the legislature has specifically provided for an interlocutory appeal or other form of interlocutory appellate review; see, e.g., General Statutes § 52-278*l* (prejudgment remedies); General Statutes § 54-63g (petition for review of bail); General Statutes § 51-164x (court closure orders); *State* v. *Ayala*, 222 Conn. 331, 340, 610 A.2d 1162 (1992); appellate jurisdiction is limited to final judgments of the trial court." (Internal quotation marks omitted.) *Conetta* v. *Stamford*, 246 Conn. 281, 289–90, 715 A.2d 756 (1998).

Both parties cite as controlling authority a line of Appellate Court cases holding that, in a foreclosure by sale, "there are typically three appealable determinations: the judgment ordering a foreclosure by sale, the approval of the sale by the court and the supplemental judgment [in which the proceeds from the sale are distributed]."[5] *Moran* v. *Morneau*, supra, 129 Conn. App. 355; see also *Glenfed Mortgage Corp.* v. *Crowley*, 61 Conn. App. 84, 88–89, 763 A.2d 19 (2000) (citing cases). The first determination is deemed final if the trial court has determined the method of foreclosure and the amount of the debt. *Moran* v. *Morneau*, supra, 356; *Danzig* v. *PDPA, Inc.*, 125 Conn. App. 254, 261, 11 A.3d 153 (2010), cert. denied, 300 Conn. 920, 14 A.3d 1005, cert. denied sub nom. *Dadi* v. *Danzig*, 564 U.S. 1044, 131 S. Ct. 3077, 180 L. Ed. 2d 899 (2011); see, e.g., *Benvenuto* v. *Mahajan*, 245 Conn. 495, 501, 715 A.2d 743 (1998) (judgment of strict foreclosure was appealable even though recoverability or amount of attorney's fees for litigation remains to be determined); *Willow*

*Funding Co.*, *L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 836–38, 779 A.2d 174 (2001) (judgment of foreclosure by sale is final judgment even if trial court has not set sale date).

Although not cited as supporting authority in these Appellate Court cases, their conclusion that a judgment of foreclosure by sale is a final judgment is in accord with the rule set forth in Practice Book § 61-2. That rule recognizes that "[w]hen judgment has been rendered on an entire complaint . . . such judgment shall constitute a final judgment." Practice Book § 61-2. When this rule applies, there is no need to turn to the alternative, as set forth in *Curcio*, for establishing the finality of the judgment, even though some aspects of the case remain interlocutory. See *Speckner* v. *Riebold*, 86 N.M. 275, 277, 523 P.2d 10 (1974) (citing New York and New Mexico case law for proposition that judgment of foreclosure is "final in part and interlocutory in part" (internal quotation marks omitted)); see also *Willow Funding Co.*, *L.P.* v. *Grencom Associates*, supra, 63 Conn. App. 837 ("foreclosure judgments are often appealable immediately"); 2 D. Caron & G. Milne, Connecticut Foreclosures (8th Ed. 2018) § 20-4:1, pp. 56–57 (noting that appeal from certain orders issued in connection with judgment of foreclosure by sale that will impact certain parties' rights in subsequent proceedings, e.g., setting terms and conditions of sale, probably would be premature from judgment of foreclosure by sale).[6]

The judgment of foreclosure by sale in the present case manifestly meets the requirements of Practice Book § 61-2. The trial court rendered judgment in favor of the plaintiff, and thus against the Davis defendants, on both counts of the complaint and ordered the full measure of relief sought therein. See *Rockstone Capital, LLC* v. *Sanzo*, 332 Conn. 306, 313, 210 A.3d 554 (2019) ("the complaint sets the parameters for determining a final judgment"); *Morici* v. *Jarvie*, 137 Conn. 97, 103, 75 A.2d 47 (1950) ("[a final] judgment [in a foreclosure action] must either find the issues for the defendant or [find the issues for the plaintiff and] determine the amount of the debt, direct a foreclosure and fix the law days").

Our review of certain fundamental principles of Connecticut foreclosure law demonstrates that the determination of priorities as between the plaintiff and the Davis defendants was an integral part of the judgment of foreclosure. "A mortgage . . . is [a] conveyance of title to property that is given as security for the payment of a debt . . . ." (Internal quotation marks omitted.) *Ankerman* v. *Mancuso*, 271 Conn. 772, 778, 860 A.2d 244 (2004). "The purpose of the judicial sale in a foreclosure action is to convert the property into money and, following the sale, a determination of the rights of the parties in the funds is made, and the money received from the sale takes the place of the property." (Internal quotation

marks omitted.) *Mortgage Electronic Registration Systems, Inc.* v. *White*, 278 Conn. 219, 229, 896 A.2d 797 (2006); see also General Statutes § 49-27. "[T]he rights of the mortgagor [or debtor] in the . . . property are terminated by confirmation of the foreclosure sale, and subsequent to such sale, any interest the mortgagor [or debtor] may claim is in the proceeds of the sale solely and not in the property." (Internal quotation marks omitted.) *Mortgage Electronic Registration Systems, Inc.* v. *White*, supra, 230.

The interests of the foreclosing plaintiff and the defendants holding *subsequent* encumbrances are similarly impacted. See *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 354, 579 A.2d 1054 (1990) ("[i]n a foreclosure proceeding the trial court must exercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee, but also to *subsequent* encumbrancers and the owner" (emphasis added; internal quotation marks omitted)); 1 D. Caron & G. Milne, supra, § 4-2, p. 205 ("all encumbrancers *subsequent* in right to the interest being foreclosed must be made parties to the action" (emphasis added)); see also General Statutes § 49-30 (providing procedure when mortgage or lien on real estate has been foreclosed and party holding encumbrance subsequent or subordinate to such mortgage or lien has been omitted or has not been foreclosed of such interest or encumbrance).

Because "the foreclosure of a mortgage or lien can be binding only on subsequent encumbrancers, a first mortgagee cannot be affected by the foreclosure of a subsequent interest. Thus, any sale ordered by a judgment in such action must be subject to the prior encumbrance." 1 D. Caron & G. Milne, supra, § 7-17:2, p. 514; see *Voluntown* v. *Rytman*, 27 Conn. App. 549, 556, 607 A.2d 896 ("[a] foreclosure by sale furnishes conflicting claimants an ideal forum for litigating their differences without prejudicing prior encumbrancers" (internal quotation marks omitted)), cert. denied, 223 Conn. 913, 614 A.2d 831 (1992); see also *Mortgage Electronic Registration Systems, Inc.* v. *White*, supra, 278 Conn. 230 ("[T]he estate that passes by committee deed to a purchaser at a foreclosure sale is no more nor less than the estate that had been held by the mortgagor or lien holder, minus the interests of parties to the foreclosure action that had been terminated during the sale. If that estate is encumbered by a valid mortgage that was not foreclosed, then the estate that passes to the purchaser is subject to that mortgage.").

These principles demonstrate that, if the Davis defendants' mortgage had priority over the plaintiff's mortgage, the Davis defendants would not be proper parties to the foreclosure action and would retain their full property interest, rather than be left with only a claim to a portion of any proceeds from the sale after the

plaintiff is paid in full. It was their joint status as a subsequent encumbrancer that permitted the foreclosure action to proceed against them. Clearly, then, the priority determination at issue was essential to the judgment of foreclosure.

The plaintiff makes two principal arguments as to why this rule of finality should not apply to the priority dispute in the present case, neither of which we find persuasive. The plaintiff first contends that, because the Davis defendants' appeal challenges the trial court's priority determination, not the plaintiff's right to foreclose on his mortgage, the Davis defendants are not appealing from the judgment of foreclosure by sale.[7] The plaintiff's argument ignores the fact that the priority issue was in dispute at trial as to both counts of the complaint—the Davis defendants denied the allegation in the foreclosure count that their mortgage was subordinate to the plaintiff's mortgage and asserted a special defense to the declaratory judgment count. The mere fact that the trial court resolved this dispute by first disposing of the declaratory judgment count does not negate its legal effect on the foreclosure count. If the Davis defendants are successful on appeal to the Appellate Court, they will be entitled to judgment in their favor, not only on the declaratory judgment count, but also on the foreclosure count. The fact that the judgment of foreclosure in favor of the plaintiff would stand as against the mortgagor and the remaining defendant encumbrancers, whose encumbrances are conceded to be subordinate to that of the plaintiff, is immaterial.

The plaintiff's second argument against allowing an immediate appeal from the judgment of foreclosure by sale, resting primarily on two Appellate Court cases, is that an appeal of a priority determination before the court's approval of the sale and the rendering of the supplemental judgment is premature. See *J & E Investment Co., LLC* v. *Athan*, 131 Conn. App. 471, 27 A.3d 415 (2011); *Moran* v. *Morneau*, supra, 129 Conn. App. 349. The plaintiff contends that, under *Moran* and *Athan*, even when the trial court properly makes a priority determination in connection with the judgment of foreclosure by sale, as in the present case, any appeal must await the approval of the sale and the rendering of the supplemental judgment. The plaintiff also points to the implausible possibility that the property could sell for an amount so far in excess of its fair market value that the sale could yield sufficient funds to satisfy the security interests of both the plaintiff and the Davis defendants.[8] We disagree.

We begin with an overview of the two Appellate Court cases on which the plaintiff relies. Like the present case, both cases involved a priority determination as between the foreclosing plaintiff and a defendant encumbrancer. Unlike the present case, however, the issue of priorities was not put in dispute by way of a

responsive pleading; the defendants were defaulted and raised the issue by way of a motion for a determination of priorities *after* the judgment of foreclosure was rendered. In each case, the appeal was dismissed for lack of a final judgment under *Curcio*.

In *Moran*, after the trial court rendered judgment of foreclosure by sale, the court granted the defaulting defendant encumbrancer's motion for a determination of priorities of the parties' interests in the subject property, ruling that the defendant held first priority. *Moran* v. *Morneau*, supra, 129 Conn. App. 351–52. The plaintiff then appealed from that ruling. Id., 352. In dismissing the appeal, the Appellate Court emphasized that the plaintiff had not filed a timely appeal from the judgment of foreclosure by sale, which was an appealable decision, and instead had appealed from a postjudgment order, which was an interlocutory decision.[9] Id., 356 and n.7. It noted that "[t]he fact that an appealable final judgment has occurred in a case does not, by itself, render a subsequent interlocutory order immediately appealable." Id., 356 n.7.

The court in *Moran* further observed that neither of the other two decisions recognized as amenable to immediate appeal—approval of the sale and the supplemental judgment—had yet occurred. Id., 356–57. The Appellate Court concluded that, although it was not per se improper for the trial court to have made the determination of priorities before the sale; id., 358; it was well established that such rights should be determined in the supplemental judgment: "Pursuant to . . . § 49-27, entitlement to proceeds of the sale, and the amount of such entitlements, is to be determined by the court in a supplemental proceeding after the sale has been ratified by the court. *Voluntown* v. *Rytman*, [supra, 27 Conn. App. 556]. Our Supreme Court has long recognized that the decree of foreclosure by sale should not adjudicate the rights of the parties to the fund or funds realized; rather, such rights should be determined by way of a supplemental judgment. *Gault* v. *Bacon*, 142 Conn. 200, 203, 113 A.2d 145 (1955); *City National Bank* v. *Stoeckel*, 103 Conn. 732, 744, 132 A. 20 (1926). . . . Clearly, a resolution of such issues provides the very raison d'etre of supplemental judgment proceedings. D. Caron & G. Milne, [Connecticut Foreclosures (4th Ed. 2004) § 8.02B], p. 188." (Footnote omitted; internal quotation marks omitted.) *Moran* v. *Morneau*, supra, 129 Conn. App. 356–57. Relying on this authority, the Appellate Court concluded that the plaintiff's claim to first priority would be subject to vindication in an appeal following the supplemental judgment. Id., 358.

In *Athan*, the trial court had resolved the priority issue in favor of the defendant mortgagee, raised by way of motion, after the court had opened the judgment of strict foreclosure and ordered the certificate of foreclosure dissolved. See *J & E Investment Co., LLC* v.

*Athan*, supra, 131 Conn. App. 478. The plaintiff filed its appeal before the trial court rendered judgment of foreclosure. Id., 478, 483. The Appellate Court dismissed the plaintiff's appeal for lack of a final judgment insofar as it challenged the trial court's determination of priority. See id., 482, 485. The court observed that "[a] judgment of foreclosure constitutes an appealable final judgment when the court has determined the method of foreclosure and the amount of the debt"; id., 483; neither of which had been determined in that case. Id. Although that holding would be dispositive of the appeal, the Appellate Court went on to observe that, if the trial court were to order a judgment of foreclosure by sale, "[that] court recently ha[d] concluded that the adjudication of priorities is not a final judgment for the purposes of appeal until a sale is approved and the court renders a supplemental judgment." Id., 484, citing *Moran* v. *Morneau*, supra, 129 Conn. App. 357.

The Davis defendants suggest that *Moran* and *Athan* can be distinguished from the present case on procedural grounds. We agree with respect to *Athan*. The fact that an appeal was taken in *Athan* before a judgment of foreclosure was rendered clearly resulted in an impermissible interlocutory appeal under our final judgment jurisprudence. In the present case, no such defect exists because the appeal was taken after the judgment of foreclosure by sale was rendered.

The Davis defendants' view that *Moran* also can be distinguished on procedural grounds finds support in a treatise on Connecticut foreclosure law, which opines: "The dilemma that arose in *Moran* . . . comes about because the parties failed to address the priorities issue in the proper manner: within the context of the pleadings. Presumably, the *Moran* complaint alleged that the . . . mortgage [of the defendant Chase Home Finance, LLC] was subordinate to the plaintiff's claim. Chase's proper course of action should have been to answer that allegation by way of a simpl[e] denial. The issue then would have been closed, and the matter would have been determined at trial, or perhaps by summary judgment. In either event, no judgment, and hence no sale, would be ordered until the issue had been ruled upon, including a determination of any appeal from the judgment. *Under this scenario, the priorities ruling is not subject to the* Moran *defect that it is not a final and thus appealable judgment, since the ruling being appealed would be either a judgment of foreclosure in favor of the plaintiff, or a judgment in favor of the defendant.*" (Emphasis added.) 1 D. Caron & G. Milne, supra, § 9-2:2.1, pp. 542–43; see also 1 D. Caron & G. Milne, supra, § 6-1:7, p. 357 ("It is inappropriate for a defendant to challenge the priority of the foreclosing plaintiff's interest by means of a motion filed under Practice Book § 23-17 [allowing for a motion for determination of priorities in the context of assigning order of law days]. Such a challenge is properly accomplished

by the filing of either an answer denying the allegation of the plaintiff's priority or, if warranted, a special defense. The issues are then closed, and the matter is heard upon a full trial . . . ."). This scenario is in accord with the Davis defendants' actions in the present case.

The treatise ignores, however, the essential substantive flaw in *Moran*, which *Athan* cited in dictum. Our disagreement with these Appellate Court cases lies in the fact that they do not recognize the important distinction between the nature of the interest held by a party claiming priority over the foreclosing plaintiff's mortgage and the interests held by encumbrancers holding interests admittedly subordinate to the plaintiff's interest, although in dispute as to that subordinate order.[10] As we previously explained, the priority of the foreclosing plaintiff is a proper and, indeed, essential aspect of the judgment of foreclosure by sale. It determines whether the defendant encumbrancer claiming priority retains its property interest or merely holds a stake in any surplus proceeds of the sale, after the plaintiff is fully compensated for its debt. See General Statutes § 49-27.

The order of priority among subsequent encumbrancers, by contrast, does not alter the nature of their interest—an interest in the surplus proceeds, not the property—and thus is not a proper subject for the judgment of foreclosure. See *New Milford Savings Bank* v. *Lederer*, 112 Conn. 447, 450, 152 A. 709 (1930) ("[t]he enforcement of . . . [the mortgagee's] claim should not be delayed by any controversy among parties whose claims are subordinate to his" (internal quotation marks omitted)); 1 D. Caron & G. Milne, supra, § 9-2:2.1, p. 541 ("a determination of priorities between subsequent encumbrancers is properly deferred until after the sale, thus allowing the auction to proceed without delay pending resolution of the dispute between those parties at a later date"). It is for this reason and in this context that this court has recognized that " '[t]he decree of foreclosure by sale should not adjudicate the rights of the parties *to the funds realized*; those rights should be determined by way of a supplemental judgment. *City National Bank* v. *Stoeckel*, [supra, 103 Conn. 744].' *Gault* v. *Bacon*, [supra, 142 Conn. 203]." (Emphasis added.) *City National Bank* v. *Traffic Engineering Associates, Inc.*, 166 Conn. 195, 201–202, 348 A.2d 637 (1974); see also *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 163–64, 169, 172, 75 A.3d 651 (2013) (trial court had jurisdiction to open supplemental judgments "[b]ecause the relief [sought] relates to the proceeds from the sale, rather than to the property itself, and, therefore, would be addressed within the supplemental judgment process without regard to the status of the property"). Each of the cases in which we recited this principle—*Stoeckel*, *Gault*, and *Traffic Engineering Associates, Inc.*—concerned a priority dispute among subsequent encumbrancers.[11]

The fact that the supplemental judgment is intended to resolve disputes only as between parties holding interests subsequent in priority to the plaintiff's mortgage is also plainly reflected in the statutory scheme. Section 49-27 provides in relevant part: "The proceeds of each such sale shall be brought into court, there to be applied if the sale is ratified, in accordance with the provisions of a supplemental judgment then to be rendered in the cause, specifying the parties who are entitled to the same and the amount to which each is entitled. If any part of the debt or obligation secured by the mortgage or lien foreclosed or by any *subsequent* mortgage or lien was not payable at the date of the judgment of foreclosure, it shall nevertheless be paid as far as may be out of the proceeds of the sale as if due and payable, with rebate of interest where the debt was payable without interest, provided, *if the plaintiff is the purchaser at any such sale, he shall be required to bring into court only so much of the proceeds as exceed the amount due upon his judgment debt, interest and costs. . . .*" (Emphasis added.) This statute plainly treats the plaintiff as having established priority and the priorities among subsequent encumbrancers as the proper subject of the supplemental judgment.

The plaintiff's argument that the appeal is premature until the sale has been approved has more support in the law but also, ultimately, is unpersuasive. See *Esposito* v. *Specyalski*, 268 Conn. 336, 345–46, 844 A.2d 211 (2004) ("We acknowledge that, because the trial court completely disposed of a counterclaim and a [third-party] action, at first blush, this case appears to be an appealable final judgment under [Practice Book] § 61-2. Our resolution of this appeal, however, rests with the question of whether the decision of the trial court is ripe for adjudication."). "[A] judicial sale becomes complete and creates a legal right to obligations among parties when it is confirmed and ratified by the court." (Internal quotation marks omitted.) *Mortgage Electronic Registration Systems, Inc.* v. *White*, supra, 278 Conn. 230. This means that the Davis defendants' property interest will not actually be terminated until the sale has been ratified. Nonetheless, their lack of priority right vis-à-vis the plaintiff has been conclusively established. A case is not ripe if it presents a hypothetical injury or a claim that is contingent on the happening of some event that has not yet and, indeed, may never transpire. See *Janulawicz* v. *Commissioner of Correction*, 310 Conn. 265, 271, 77 A.3d 113 (2013); *Esposito* v. *Specyalski*, supra, 346. The Davis defendants' loss of priority is neither hypothetical nor contingent on an event that may never transpire. If any outcome is purely hypothetical, it is the plaintiff's suggestion that the sale could yield sufficient proceeds to cover both the plaintiff's and the Davis defendants' mortgages, such that the Davis defendants would not actually be harmed by the priority determination. If that were a reasonable

possibility, it would raise a question of aggrievement, not ripeness. The trial court's priority determination, however, plainly meets the standard for aggrievement. "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 159, 699 A.2d 142 (1997); see also *Pomazi* v. *Conservation Commission*, 220 Conn. 476, 483, 600 A.2d 320 (1991).

Finally, to the extent that practical and pragmatic considerations may be taken into account to bolster our final judgment determination, they weigh strongly in favor of permitting an appeal before the sale has been ratified. As the authors of the foreclosure treatise observe, the ability to calculate an appropriate bid on the property is impaired by the uncertainty of whether the foreclosing plaintiff or a defendant encumbrancer has first priority. See 1 D. Caron & G. Milne, supra, § 9-2:2.1, p. 542.[12] This concern has been cited by another jurisdiction as a compelling reason "for requiring an appeal to be perfected in a foreclosure action from a judgment entry decreeing sale and determining the mortgage to be the first and best lien upon the land." *Queen City Savings & Loan Co.* v. *Foley*, 170 Ohio St. 383, 388, 165 N.E.2d 633 (1960). Although the plaintiff emphasizes the delay from allowing an immediate appeal, his position also could result in a delay. If a nonparty were to bid on the property without knowledge of the prior encumbrance and a reviewing court later were to restore that encumbrance, the nonparty may seek to set aside the sale on the ground of mistake.

The order of the Appellate Court dismissing the appeal is reversed and the case is remanded to that court for further proceedings.

In this opinion the other justices concurred.

* May 18, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The United States of America and The Village at Ridgefield Condominium Association, Inc., who had encumbrances on the subject property that were subsequent and subordinate to the plaintiff's mortgage, were also named as defendants but are not participating in the present appeal.

[2] The Davis defendants submitted a copy of the Ridgefield index for KDFBS, as it stood after the correction report was issued, as an exhibit. That index lists the Davis mortgage according to the date on which it was executed, such that it immediately follows the warranty deed by which KDFBS received the property and retains the same page and volume number as originally recorded. Although evidence was submitted to establish these facts, the plaintiff's complaint did not allege that the correction report had been issued or that the Davis mortgage had been reindexed. Neither the Davis defendants nor the trial court addressed the anomaly arising from the fact that the declaratory judgment count alleged that the Davis mortgage was outside KDFBS' chain of title but the foreclosure judgment count did not allege that the mortgage was brought back into that chain of title.

[3] The plaintiff alternatively sought a declaration that the Davis mortgage was invalid because it was granted by an entity other than the record owner. The trial court did not expressly acknowledge this alternative theory, but its findings that "a mortgage deed from KDFBS to the [Davis defendants] was executed and recorded" and that this deed was subordinate to the

plaintiff's mortgage implicitly rejects that alternative theory.

[4] Under *Curcio*, an interlocutory order or action is treated as a final judgment if either (1) "the order or action terminates a separate and distinct proceeding," or (2) "the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 191 Conn. 31.

[5] "By way of contrast, the strict foreclosure process typically presents only one judgment or ruling that is properly appealable, the judgment of strict foreclosure, because the effect of strict foreclosure is to vest title to the real property absolutely in the mortgagee, and to do so without any sale of the property. . . . Any motion for the determination of priorities in a strict foreclosure action must be filed prior to the rendering of judgment." (Citations omitted.) *Moran* v. *Morneau*, supra, 129 Conn. App. 355 n.6.

[6] Unless otherwise indicated, all citations in this opinion to this treatise on Connecticut foreclosures are to the 2018 edition.

[7] The plaintiff frames this issue as the Davis defendants abandoned their right to appeal from the judgment of foreclosure by not raising that issue on appeal.

[8] The amount of debt owed to the Davis defendants is not in the record. The face value of the Davis mortgage, executed less than eight years before the present action was commenced, is $565,000. The total debt owed to the plaintiff, including attorney's fees, was approximately $195,000. Assuming the full value of the Davis mortgage to roughly approximate the debt, the combined debt would be $760,000. The plaintiff's expert appraised the property's fair market value at $310,000.

[9] It is unclear whether the Appellate Court in *Moran* was suggesting that the plaintiff could have, and should have, appealed from the judgment of foreclosure by sale, and the Appellate Court does not indicate on what basis the plaintiff would have been aggrieved by such a judgment prior to the determination of priorities. It is also unclear whether the Appellate Court was suggesting that the plaintiff could have appealed if the determination of priorities had been made before the judgment of foreclosure was rendered.

[10] We suspect that overly general language in some of this court's opinions, in which we did not make clear that we were referring only to lien holders with subordinate interests, contributed to this misperception. See, e.g., *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 163–64, 75 A.3d 651 (2013) ("[T]he supplemental judgment performs a variety of functions. Not only does it ratify and confirm the sale, but it also determines the priorities of the encumbrancers and finds the debt due to each, as well as orders disbursement of the expenses of the sale and possession to the successful bidder. . . . This description of the purposes of the supplemental judgment procedure suggests that it is the mechanism to adjudicate all claims on the proceeds paid into the court and to determine their priorities. This would include the claims of the mortgager and the purchaser, in addition to those of lienors." (Citations omitted; internal quotation marks omitted.)).

[11] A convoluted procedural posture in *City National Bank* v. *Traffic Engineering Associates, Inc.*, supra, 166 Conn. 195, makes this context less clear. In that case, after the judgment of foreclosure by sale was rendered, the foreclosing plaintiff became the successor to a defendant encumbrancer who claimed priority over another junior encumbrancer. A careful reading shows that both defendants held interests subordinate to the plaintiff's interest. See id., 196 ("[i]n this action, following a judgment ordering a foreclosure by sale, the Superior Court, pursuant to a motion made, determined priorities *among the defendants* with respect to the payment of any sums remaining from the sale *in excess of the amount due the plaintiff*" (emphasis added)).

[12] The authors of the foreclosure treatise posit the following hypothetical and its consequences in the absence of an appeal from the judgment of foreclosure by sale: "[T]he plaintiff is a mechanic's lienor with a debt of $200,000. The property is appraised at $250,000. In addition to the owner, the complaint names as a defendant a mortgagee with a debt of $150,000, and alleges that the mechanic's lien is prior in right to the mortgage. . . . The trial court [resolves a priority dispute] in favor of the mortgagee.

"[If no appeal is permitted before the sale] these circumstances place both the lienor and the mortgagee in a difficult position, since neither one can know whether it is bidding subject to, or free and clear of, the other's interest. If the lienor were to bid its debt (ignoring the costs of the sale) and were to be the high bidder, it would realize only $50,000 from the sale, since the balance of its bid ($150,000) would be paid to the mortgagee. Similarly, the mortgagee bidding its debt would find, if the lienor were later

to be determined to be prior, that its entire bid would be paid to the lienor. In either case, either party would suffer a loss in the event [that the reviewing] court later ruled against it on the priority question." 1 D. Caron & G. Milne, supra, § 9-2:2.1, p. 542.

———————————————